IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| LAMONT WILSON, | ) |
| Plaintiff, | ) Case No. 4:14-cv-00033 |
| v. | ) **MEMORANDUM OPINION** |
| DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC, and DOLGEN, LLC, | ) By: Hon. Jackson L. Kiser<br>Senior United States District Judge |
| Defendants. | ) |

Before me is Defendants' Second Motion for Summary Judgment. [ECF No. 67.] The issues presented in the Motion were fully briefed by the parties, and they appeared before me on July 31, 2015, to argue their respective positions on the facts and the law. The matters are now ripe for disposition. For the reasons stated in herein, Defendants' Second Motion for Summary Judgment will be granted with respect to Count I (discrimination) and denied with respect to Count II (retaliation). Plaintiff's retaliation claim will proceed to trial.

I. **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**

Plaintiff Lamont Wilson ("Plaintiff") is a resident of Blairs, VA, and is blind in his right eye. Defendant Dollar General ("Defendant")[1] is a small-box discount retailer with over 11,000 stores in 40 states. Plaintiff was previously employed by Defendant in 2010. Around that time, Plaintiff developed iritis and began having difficulty seeing in his left eye, his only functioning eye. Following several visits with his physician, Plaintiff's doctor removed him from work until his eyesight could be restored. Dollar General terminated Plaintiff's employment in April of 2010. Plaintiff contends that he was terminated because he could not return to his work as a

---

[1] Although all Defendants joined in the present motion, they are jointly referred to as "Dollar General" for ease of reference. Defendant Dollar General Corporation maintains that it is not a proper defendant in this action.

result of his disability; Dollar General refutes that rationale. In 2012, Plaintiff filed suit against Dollar General alleging discrimination in violation of the Americans with Disabilities Act. I granted summary judgment to Dollar General, and the Fourth Circuit affirmed that decision.

Subsequent to his termination, Plaintiff had two surgeries to restore the vision in his left eye. On or about June 12, 2013, Plaintiff reapplied for a job through Defendant's on-line employment portal. Because Plaintiff is not comfortable with computers, Plaintiff went to the Virginia Employment Commission ("VEC") where a counselor helped Plaintiff complete and submit the application on-line. Defendants contend that Plaintiff never completed its multi-step application process.

According to Dollar General, the on-line application process is a two-step process. The first step—the "Gateway Questionnaire"—solicits information concerning an applicant's employment history, education history, shift availability, and other general information. After completing the Gateway Questionnaire, the applicant must then complete the "Assessment." Defendant does not assert what additional information is needed or solicited in the Assessment, but only that it is a second step. At his deposition, Plaintiff described the type of number of questions on the Assessment part of the application; Defendant does not dispute his description and, in fact, conceded at oral argument that his description of the Assessment was correct.

On June 12, 2013, Plaintiff completed, at a minimum, the Gateway Questionnaire. Defendant then e-mailed him an auto-generated e-mail message the same day that read, in relevant part:

> Thank you for the time you took applying for employment with Dollar General. ***We have received your application*** for the position of 3410 GENERAL WAREHOUSE—South Boston VA Distribution Center—1037BR ***and are currently reviewing your experience and qualifications. If your profile corresponds to our requirements, a member of our team will contact you***.

Plaintiff maintains that he completed the full application—the Gateway Questionnaire and the Assessment—yet yet Defendant asserts that its record do not show that Plaintiff even started the Assessment. According to Dollar General, the June 12 e-mail was not meant to inform Plaintiff that it had received his whole application or that his application was under review.

Defendant asserts that, on June 14, 2013, its computer systems sent Plaintiff an auto-generated e-mail which read, in relevant part:

> You recently began the process of applying for a position at Dollar General, but did not finish the assessment(s). **Your application will not be complete and you will not be considered for employment until you have completed the assessment(s). Please follow the link below to access your pending assessment(s).**

According to Defendant, this message "would not have been generated if Mr. Wilson had completed the Assessment at that time (i.e., by June 14, 2013)." Subsequent to these events, Plaintiff was not offered an interview or a job with Dollar General. Both Henry Bruining (Senior Manager of Human Resources) and Amanda Dalton (Human Resources Representative), the two people who were responsible for reviewing applications and filling positions, filed declarations stating that they never reviewed an application filed by Plaintiff.

On July 8, 2014, Plaintiff filed suit in this Court against Dollar General, DolgenCorp, LLC, and Dolgen, LLC (collectively "Defendants"). Plaintiff alleged that Defendants refused to hire him because he was disabled, and that they refused to hire him in retaliation for his filing of a charge of discrimination against Dollar General stemming from his prior employment and termination, all in violation of the Americans with Disabilities Act. Defendants filed their Answer on September 4, 2014. A little over a month later, on October 8, 2014, Defendants filed a Motion for Summary Judgment, in which they argued that Plaintiff never fully completed an

- 3 -

Case 4:14-cv-00033-JLK-RSB   Document 91   Filed 08/07/15   Page 3 of 19   Pageid#: 807

application for employment. I denied this motion, holding that the June 12 e-mail established a genuine issue of material fact with regard to Plaintiff's application status.

On June 25, 2015, Defendants filed a second motion for summary judgment, arguing that Plaintiff cannot establish a *prima facie* case of either discrimination (Count I) or retaliation (II). Alternatively, even if Plaintiff can establish the *prima facie* case, he cannot establish that Defendants legitimate, non-discriminatory and non-retaliatory reasons for its actions were false and a pretext for discrimination or retaliation. Plaintiff responded, and Defendants filed their reply.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009). A genuine dispute of material fact exists "[w]here the record taken as a whole could…lead a rational trier of fact to find for the nonmoving party." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute cannot be created where there is only a scintilla of evidence favoring the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists. Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249−50, 254. A fact is material where it might affect the outcome of the case in light of the controlling law. Anderson, 477 U.S. at 248. On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts. Scott, 550 U.S. at 380. At this stage, however, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute

exists making it appropriate for the case to proceed to trial. Anderson, 477 U.S. at 249. It has been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature. Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

### III. DISCUSSION

Plaintiff has filed a two-count Complaint against Dollar General, his former employer. In Count I, he alleges that Dollar General discriminated against him on the basis of his disability, in violation of the Americans with Disabilities Act ("ADA"), when it failed to hire him in June of 2013. In Count II, he alleges that Dollar General's refusal to hire him in 2013 was in retaliation for a prior discrimination lawsuit he filed against it. Defendant has moved for summary judgment on both counts, and they are addressed in turn.

A. Count I—Discrimination under the ADA

"In order to establish a *prima facie* case of failure to hire under the ADA, the plaintiff must prove by a preponderance of the evidence that: (1) he is within the ADA's protected class; (2) he applied for the [vacant] position in question; (3) he was qualified for that position; and (4) the defendants rejected his application under circumstances that give rise to an inference of discrimination." Malone v. Greenville Cnty., C/A No. 6:06-2631-RBH, 2008 WL 4557498, at *9 (D.S.C. Aug. 11, 2008) (citing Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 258 (4th Cir. 2006)). Under the McDonnell Douglas burden-shifting framework, once the plaintiff has made out a *prima facie* case, "the burden then shifts to the defendant to provide a legitimate, non-discriminatory explanation for its decision." Heiko, 434 F.3d at 258. "Once such a neutral reason is proffered, the burden reverts to the plaintiff to establish that the employer's non-discriminatory rationale is a pretext for intentional discrimination. At this point, 'a plaintiff's

*prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'" Id. at 258–59 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 33, 148 (2000)).

Regarding the first prong of the *prima facie* case, the ADA defines actual "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1) (2014); see also id. § 12102(4); Boitnott v. Corning Inc., 669 F.3d 172, 174 (4th Cir. 2012). "The determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case." E.E.O.C. v. Sara Lee Corp., 237 F.3d 349, 352 (2nd Cir. 2001); see also Taylor v. Federal Express Corp., 429 F.3d 461 (4th Cir. 2005). The general definition of a major life activity includes seeing. See 42 U.S.C. § 12102(2)(A). The Equal Employment Opportunity Commission has said,[2] "[a]n impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of [the ADA]." 29 C.F.R. § 1630.2(j)(1)(ii) (2014).

In the present case, Plaintiff contends that his blindness in one eye ("monocular vision" or "monocularity") substantially limits him in the major life activity of seeing. (See, e.g.,

---

[2] "In the ADA Amendments Act of 2008 ["ADAAA"], Pub. L. No. 110-325, 122 Stat. 3553, 3553–55 (2008), Congress rejected the limiting interpretation of the term 'substantially limits' in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) and Toyota Motor Manufacturing, Kentucky, Inc. v. William, 534 U.S. 184 (2002) in favor of a broader view as embodied in School Board of Nassau County v. Airline, 480 U.S. 273, 281 (1987) (holding that a person's ability to work can be substantially limited by the negative reactions of others to an impairment)." Wyatt v. Md. Institute, Civil Action No. RDB-10-2584, 2012 WL 739096, at *4 n.6 (D. Md. Mar. 7, 2012). In the post-ADAAA world, "the term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(1)(iv) (2014).

- 6 -

Lamont Wilson Dep. 61:3–10, Mar. 9, 2015 [ECF No. 80-1].) While it is true that "[t]he major life activity of seeing . . . is always substantially limited by blindness," Heiko, 434 F.3d at 256, that is not always the case with monocularity. The Supreme Court has indicated that "monocular individuals, like others claiming the [ADA]'s protections, [must] prove disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial." Albertson's, 527 U.S. at 567. Additionally, a court must take "an individual's ability to compensate for the impairment" into consideration when determining the impact on the major life activity of seeing. Foore v. City of Richmond, Va., 6 F. App'x 148, 152 (4th Cir. 2001) (citing Albertson's, 527 U.S. at 565).

Here, Plaintiff has not offered any evidence to show that his monocular vision limits him in any way. According to his physician:

> As far as I can determine there is no reason Mr[.] Wilson cannot run his own [business] and continue to work. He is simply reminded that he should wear some type of safety glass wear at all times given his monocular status. His left eye is stable and he maintaining good vision in that eye. ***No restrictions at this time.*** The only aspect we did not assess today was visual field so I do not know his horizontal degree of vision, which is only important as regards DMV requirements.

(Def.'s Mem. in Supp. of Mot. for Summ. J. Ex. G, June 25, 2015 [ECF No. 68-5, 71].) Plaintiff's own physician stated that Plaintiff has no restrictions, a conclusion which cuts strongly against Plaintiff's required showing of the extent of his limitations.

More compelling than his physician's conclusion, however, is Plaintiff's own testimony detailing his lack of limitations:

> A:     . . . My vision got well. My vision got back to 20/25.
> Q:     Is that what it is today, 20/25?
> A:     20/25.

                    *  *  *  *  *

A: . . . I do what I want to do. I work and keep a job, run a business, I'm doing well. I drive every day. I do everything a man with two eyes can do.

\* \* \* \* \*

Q: And you said you can do things that anyone with two eyes can do?
A: Yes.
Q: Is there nothing that you've tried to avoid in the past that might cause you to have another detached retina in your left eye?
A: No, I can do anything physical that anybody else can do.
Q: Okay.
A: The only thing I don't – the only thing I do different now, I don't ride motorcycles anymore. That's it. Anything else, I can do anything a man with two eyes can do.

\* \* \* \* \*

Q: Okay. ***And is it your testimony that there is nothing that you can't do other than you avoid riding motorcycles right now. There is nothing that you can't do because of your eyes today?***
A: ***That's right, I can do anything – anything you can do, I can do.***
Q: Okay.
A: ***And you got two good eyes, I can do anything that you can do.***
Q: So your disability causes no restrictions or limitations on what you can do in life?
A: No, I got a disability, a lot of things I can't do. But as far as working – explain what you're talking about doing. Are you talking about working or physical? What kind of things are you talking about?
Q: Okay. The job at Dollar General.
A: I can do any job at Dollar General because plenty of jobs at Dollar General I can do.

\* \* \* \* \*

A: Yeah, I'm fully recovered. Once the doctor released me, I was fully recovered. Nothing I couldn't do.

\* \* \* \* \*

- 8 -

A: Yes. I ran my own business. If I can run a salvage business and work at Food Lion and work the salvage business and run my own business, I can do [the job at Dollar General].

\* \* \* \* \*

Q: Do you have problems seeing things that are far away?
A: No.
Q: Okay. How about things that are close up to you?
A: No, like I said, the only thing I have a problem with – *I really have no problems*.

\* \* \* \* \*

A: [M]y peripheral vision is good. My peripheral vision is good. I can see.

\* \* \* \* \*

Q: Okay. How about any light sensitivities? Do you have any restrictions?
A: No light sensitivities. No, now.
Q: Can you see in darker areas as well as anyone else?
A: Yes. I drive at night. I drive at night. I drove up here.
Q: How about any environmental limitations? For example, can you work in a dusty environment or would that irritate your eyes?
A: No, no problem.
Q: All right. Can you read a computer screen?
A: Yes.
Q: Were you able to read a computer screen in 2013?
A: Yes, sir.
Q: Okay. Do you have any kind of restrictions on your driver's license right now?
A: No restriction at all.

\* \* \* \* \*

Q: All right. Have you had any problems getting up or down stairs because of your vision.
A: *No. I have no restrictions at all with my vision. None at all.*

- 9 -

(Wilson Dep. 58:7–10, 59:16–18, 59:22–60:12, 61:11–62:7, 63:14–16, 64:6–9, 67:4–10, 68:10–11, 68:17–69:14, 70:2–6 (emphasis added).) By his own testimony, the only limiting effect of his monocularity is that he does not operate a motorcycle.

Plaintiff argues that he is disabled and relies on only one piece of evidence to support this: his contention that he "[has] a disability" and that there are "a lot of things [he] can't do." (Id. 61:22–62:1; see also Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. pg. 9, July 16, 2015 [ECF No. 80].) The question for me to answer, however, is not whether Plaintiff believes he is disabled; surely he does. The question is whether that disability falls under the protection of the ADA. Plaintiff has not offered any evidence to meet this burden.

Other courts examining this question have come to the same conclusion under similar circumstances. For example, in Foore v. City of Richmond, the plaintiff contended "that his monocular vision substantially limit[ed] for him the major life activity of seeing. Specifically, [he claimed] that his visual impairment substantially limits his ability to see because he does not have any depth perception." 6 F. App'x 148, 152 (4th Cir. 2001). Relying on Albertson's, Inc. v. Kirkingburg, 527 U.S. 55 (1999), the Fourth Circuit held that, "Foore did not establish that he is disabled." Id. The Court concluded:

> The evidence shows that Foore has compensated for his monocular vision and that the impairment has not substantially limited the major life activity of seeing. Foore has a full range of peripheral vision, he can read, and he has a Virginia driver's license. Foore's ophthalmologist, Dr. Guerry, testified that although Foore is legally blind in his right eye, he "can do just about anything that anyone else can do using his right eye except for seeing fine detail. He has a tiny area in the center of his vision where he doesn't see. That is covered nicely by his good acuity in the left eye." Dr. Guerry also indicated that Foore's brain has developed mechanisms to adjust to the limitations of his right eye. Although Foore does not have any depth perception, he has learned to compensate for this limitation[.] . . . In concluding that Foore's 20/400 vision in his right eye has not substantially limited the

>       major life activity of seeing, we are mindful that the Supreme
>       Court said in Albertson's that individuals "with monocular vision
>       'ordinarily' will meet the Act's definition of disability."

Id. (quoting Albertson's, 527 U.S. at 567). In the present case, Plaintiff does not maintain that he is as limited as Foore, and his vision in his remaining good eye is vastly improved over Foore's. (See Wilson Dep. 58:7–10.)

In Perry v. Kappos, the Fourth Circuit held that a plaintiff with "no vision in his left eye and reduced vision in his right eye" was not disabled under the Rehabilitation Act.[3] 489 F. App'x 637, 638 (4th Cir. 2012). The Court of Appeals noted that the plaintiff had "obtained a Maryland driver's license and even [felt] comfortable traversing certain routes at night, provided they were familiar and well lit." Id. The Court concluded that, "[b]ecause [plaintiff's] admissions reveal that he is able to function adequately with the use of corrective devices, he has not established a disability under the Rehabilitation Act." Id. at 640. In the present case, Plaintiff has established that he has a *higher* level of functioning than the Plaintiff in Perry. Whereas Perry was limited to driving familiar and well-lit streets at night, Plaintiff reports no such limitations. (See Wilson Dep. 68:20–69:1.)

Similarly, in Wyatt v. Maryland Institute, the District of Maryland held that a plaintiff had "not met the requirement for an actual disability under the Americans with Disabilities Act" when he failed to show that his glaucoma was sufficiently limiting. Case No. RDB-10-2584, 2012 WL 739096, at *6 (D. Md. Mar. 7, 2012). In that case, the plaintiff drove a car "during the

---

[3] "Section 202 of the ADA prohibits discrimination against the disabled by public entities; § 504 of the Rehabilitation Act prohibits discrimination against the disabled by recipients of federal funding, including private organizations." Barnes v. Gorman, 536 U.S. 181, 184–85 (2002) (citing 29 U.S.C. § 794(b)(3)). "The regulations under [the Rehabilitation Act and the ADA] must be 'consistent' with each other, and courts may not construe the provisions of the ADA 'to apply a lesser standard than the standards applied under [the Rehabilitation Act] or the regulations issued by Federal agencies pursuant' to the Rehabilitation Act." Paulone v. City of Frederick, 787 F. Supp. 2d 360, 370 (D. Md. 2011) (quoting 42 U.S.C. § 12134(b), 12201(a)).

- 11 -

day and at night for his personal and professional use," and he regularly drove "short, familiar and well-lit routes." Id. at *6. Unlike Plaintiff here, Wyatt reported trouble reading and writing, and that he chose his occupation "based on the limited amount to reading and writing required . . . ." Id.

In Hill v. Southeastern Freight Lines, Inc., the Middle District of North Carolina held:

> [B]ased on Plaintiff's own testimony at his deposition, Plaintiff's eye condition does not prevent him from driving during the day, driving for short distances at night, reading, doing yard work, doing housework, or caring for himself to the same extent as an average person in the general population. It is therefore the finding of the Court that Plaintiff is not substantially limited in the major life activity of seeing 'as compared to most people in the general population.' . . . [T]o the extent that Plaintiff has failed to show that he is substantially limited in a major life activity, he cannot show that he is disabled within the meaning of the ADA.

877 F. Supp. 2d 375, 390 (M.D.N.C. 2012) (quoting 29 C.F.R. 1630.2(j)(1)(ii)). Accord Dyke v. O'Neal Steel, Inc., 327 F.3d 628, 632 (7th Cir. 2003) (holding that plaintiff's monocular vision, which "prevented him only from driving at night, working on roofs, holding his head straight when looking left to right, and participating in various recreational activities," was not substantially limiting)

The same is true of Plaintiff here. The phrase "'[s]ubstantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Plaintiff, however, has failed to offer any evidence that he is limited at all, substantially or otherwise. By failing to carry his burden to show that he is substantially limited in a major life activity as compared to most people in the general population, he has failed to make out a *prima facie* case of discrimination under the ADA. I will grant summary judgment to Defendants on Count I.

B.  Count II—Retaliation

In order to state a *prima facie* claim for retaliation under the ADA, "a plaintiff must show that: (1) he engaged in a protected activity; (2) his employer acted adversely against him; and (3) the protected activity was causally connected to the employer's adverse action." Coursey v. Univ. of Md. E. Shore, 577 F. App'x 167, 175 (4th Cir. 2014). "When those elements are satisfied, the burden shifts to the employer 'to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions.'" Id. (quoting Rhoads v. F.D.I.C., 257 F.3d 373, 392 (4th Cir. 2001)). If the employer satisfies that burden, "the plaintiff 'must demonstrate that the proffered reason is a pre-text for forbidden retaliation.'" Rhoads, 257 F.3d at 392 (quoting Haulbrook v. Michelin N. Am., 252 F.3d 696, 706 (4th Cir. 2001)). In the present case, Defendant only challenges the third prong—causal connection.

Here, the two-year window between Plaintiff's protected activity (filing a complaint with the EEOC and pursuing it in this Court) is not so great so as to destroy the causal connection of his *prima facie* case. Because he was fired by Dollar General, Wilson "was retaliated against, if at all, upon the employer's first opportunity to do so, *i.e.*, when [he] expressed [his] interest in being rehired approximately two years after [his termination]." Templeton v. First Tennessee Bank, N.A., 424 F. App'x 249, 251 (4th Cir. 2011) (per curiam) (unpublished). Plaintiff has alleged a causal connection between his protected activity and Dollar General's adverse employment action. Accord Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004) (assuming, without deciding, "that in the failure-to-hire context, the employer's knowledge coupled with an adverse action taken at the first opportunity satisfied the causal connection element of the prima facie case"); Thurston v. Am. Press, LLC, 497 F. Supp. 2d 778, 785 (W.D. Va. 2007) ("I find that Defendant's knowledge here of Plaintiff's protected activity . . . , coupled with Defendant's

failure to hire Plaintiff at the first opportunity it had to do so [five years later] satisfies the causal connection prong of Plaintiff's prima facie retaliation claim.").

Because Plaintiff has established a *prima facie* case of retaliation, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for its action. Throughout this case, Defendant has offered shifting explanations for its action. First, it claimed Plaintiff never completed an application. I determined that the evidence contradicted that assertion. (See Mem. Op. pg. 6, Nov. 20, 2014 [ECF No. 32] ("[I]t is clear that there is a genuine dispute over a material fact—namely, whether Plaintiff actually completed a job application. . . . Despite what Defendants now maintain the e-mail is *supposed* to mean, the clear and unequivocal meaning of the e-mail is that Defendants are in receipt of an application and are reviewing it."). Defendants persist in their explanation that, although the June 12 e-mail explicitly informed Plaintiff that Dollar General "[has] received [his] application . . . and are currently reviewing [his] experience and qualifications" (Decl. of Lamont Wilson ¶ 4, Sept. 8, 2014 [ECF No. 19-1]), it actually means the exact opposite. Those words, according to Dollar General, mean that they had *not* received his application and were *not* currently reviewing his experience and qualifications. That explanation was insufficient to secure judgment as a matter of law during Defendants first motion for summary judgment, and it is insufficient now.

Moreover, the more-developed Record now before the Court undermines that justification even more than the June 12 e-mail does on its own. Defendants argue that Plaintiff never started the Assessment (Dep. of Leslie Allen 22:12, June 8, 2015), and that Defendants sent him an e-mail on June 14 informing him that he had not completed the Assessment (cf. Dep. of Carey Massey 15:15–18, June 8, 2015). Plaintiff, however, recalls vividly the questions that were on the Assessment, heavily suggesting that he *did*, in fact, start the Assessment. Tellingly,

Defendant have not questioned his description of the Assessment, permitting the inference that he is correct regarding the types of questions that were on the Assessment. Thus, taking the evidence in the light most favorable to Plaintiff, the evidence suggests Plaintiff *did* start the Assessment and Defendants are wrong. Therefore, at this stage, I cannot rely on the accuracy of those records, especially when Plaintiff flatly contradicts them and offers compelling evidence in support of that contradiction.

In light of my ruling on Defendants' first motion for summary judgment, Defendants have now come forward with different reasons their actions. Setting aside the fact that an alternate explanation offered after the first was rejected inspires little confidence that it is actually true, the Record at this stage simply does not support Defendants' *post hoc* rationales for its actions. First, Defendant maintains that, even if Plaintiff did complete the Assessment, he did not receive a passing score on it, and therefore his application was never passed along to the decision makers at Dollar General. But this explanation flies in the face of Defendants' original justification—that Plaintiff never completed the Assessment. If Defendants believe Plaintiff never even started as Assessment, they have no basis to argue that his score on that Assessment was, or would have been, insufficient. Additionally, if this were in fact a true statement, Carey Massey stated that Plaintiff would have received an e-mail stating that he did not pass the Assessment. (Massey Dep. 15:15–18.) Defendants have not produced such an e-mail, leaving their justification without the evidentiary support they contend should exist.

Defendants argue that Plaintiff has not produced evidence to show that he achieved a passing score on the Assessment, and that he did not depose anyone from Kenexa (the third-party hosting company that maintained Dollar General's on-line application system). That argument is unpersuasive. It is Defendants' obligation to put forth evidence of a legitimate, non-retaliatory

- 15 -

rationale for its actions. Plaintiff is not obliged to disprove every possible rationale Defendants proffer, including ones (like this one) that are wholly without evidentiary support.

Next, Defendants argue that, even if he passed the Assessment, no one at Dollar General knew he was applying or ever looked at his application. This rationale—as in the first motion for summary judgment—is flatly contradicted by the June 12 e-mail. That e-mail stated that Plaintiff's application was being reviewed, and it was signed by "Dollar General Human Resources." (Wilson Decl. ¶ 4 & unmarked exhibit [ECF No. 19-1].) Defendants cannot now maintain that no one in the human resources department reviewed his application when the June 12 e-mail says exactly the opposite. As I stated in the first motion for summary judgment, "[w]hich of two contradictory statements is true is the unquestioned province of a jury or a judge sitting as a trier of fact." (Mem. Op. pg. 6 n.2, Nov. 20, 2014 [ECF No. 32].)

Finally, Defendants throw every argument they have against the wall to see what will stick:

> Perhaps something did go wrong on June 12, 2013, such as a malfunction with the computer Plaintiff used to apply at the Virginia Employment Commission ("VEC"). Perhaps the unidentified woman who took control of the VEC computer that Wilson used to apply didn't actually "hit the submit button" at the end of the Assessment as Plaintiff believed. Perhaps the VEC did not "disable all pop-up blockers" on the computer that was used by Plaintiff, as recommended for optimal performance of the online application system. Regardless of the reason, Dollar General's records never reflected a completed Assessment, nor a passing "meets standards" score after Plaintiff allegedly applied using the VEC computer. As a consequence, Plaintiff did not show up in the pool of candidates eligible to be hired in 2013.

(Defs.' Reply Mem. in Supp. of Mot. for Summ. J. pg. 8, July 24, 2015 [ECF No. 83] (internal citations omitted).) There is not a single fact—other than Defendants' questionable computer records—to support any of these arguments. Again, it is not Plaintiff's obligation to disprove

- 16 -

every conceivable rationale for why he was not hired; he can simply rebut as false Defendants' proffered justification. But even if there was evidentiary support for any of these arguments, they are all contradicted by the June 12 e-mail. According to that e-mail, there were *no* technical difficulties; Plaintiff applied, his application was submitted, and the human resources department reviewed that application. If the June 12 e-mail means something other than what it says, a jury will have to make that determination. Rewriting the English language and changing the definitions of words (which is what Defendants' position must rely on[4]) is not the province of the Court on a motion for summary judgment.

Although Defendants explanations for its actions require a leap of logic to accept, they have nevertheless offered non-retaliatory reasons for their actions. The burden therefore shifts back to Plaintiff to establish pretext. On the Record before the Court and under the standard applicable to summary judgment, he has accomplished this. For the reasons stated above, the evidence does not bear out Defendants' purported reasons for refusing to rehire Plaintiff. As Plaintiff accurately points out, "the trier of fact can reasonably infer from the falsity of the explanation that [Dollar General] is dissembling to cover up a discriminatory purpose." Ham v. Wash. Suburban Sanitary Comm'n, 158 F. App'x 457, 462 (4th Cir. 2005); see also Henderson v. Ford Motor Co., 403 F.3d 1026, 1034 (8th Cir. 2005) ("To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a 'phony excuse.'"); Gebreslassie v. Lyngblomsten, Case No. 05-326, 2005 WL 1965962, at *3 (D. Minn. Aug. 16, 2005) (holding that an employer's rationale which "was not legitimate" was "objective evidence of pretext").

---

[4] Defendants' position relies on redefining "application" to mean "part of the application," and "reviewing" to mean "not reviewing."

- 17 -

It may very well be true that, despite what the June 12 e-mail says, Dollar General simply did not receive Plaintiff's application. Admittedly, there is a great deal of evidence to support that position. If that is the case, then there was certainly no retaliation. On the Record presented to the Court, however, Defendants' position is not uncontroverted. On a motion for summary judgment, all reasonable inferences must be taken in Plaintiff's favor. Summary judgment is not appropriate on Count II.

## IV. CONCLUSION

Although Plaintiff considers himself disabled, he does not meet the definition of "disabled" under the ADA. Because he is not a qualified individual, he is not entitled to the anti-discrimination protections of the ADA. For this reason, Defendants are entitled to summary judgment on Count I.

Summary judgment is not appropriate on Count II. Plaintiff has established a causal connection between his protected activity and the adverse employment decision, so he has established a *prima facie* case of retaliation. Although Defendants have offered several non-retaliatory reasons for their actions, the evidence in the light most favorable to Plaintiff calls into question the legitimacy of those reasons. Under the standard of review applicable to summary judgment motions, it follows that those reasons are illegitimate, and thus insufficient, and that

Plaintiff has adequately raised a question as to whether those reasons were simply a pretext for discrimination. Therefore, summary judgment is not proper on Count II, and Plaintiff's retaliation claim will proceed to trial.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 7th day of August, 2015.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE